IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| NICOL JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:22-cv-01133-STA-jay |
| ) | Chief Judge Anderson |
| KINGDOM HALL OF JEHOVAH ) | Magistrate Judge York |
| WITNESS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendants Watch Tower Bible and Tract Society of Pennsylvania ("WTPA"), Watchtower Bible and Tract Society of New York, Inc. ("WTNY"), and Paris TN Congregation of Jehovah's Witnesses (the "Paris Congregation") (collectively, "Defendants") respectfully submit this Memorandum in Support of their Motion to Dismiss the Amended Complaint. As discussed below, Plaintiff has waited nearly 30 years to bring her claims against Defendants. Based on the facts she alleges, Plaintiff's claims are time-barred under the applicable statute of limitations. Under these circumstances, Plaintiff is under an affirmative duty to plead facts sufficient to plausibly establish that a recognized tolling doctrine applies to make her claims timely. She has not done so. Plaintiff did *not* allege:

1) that she recently discovered her alleged injuries or Defendants' alleged involvement in them;

2) that Defendants concealed her injuries (as to which she has first-hand knowledge) or any potential claim from her; or

      3)      that Defendants made any representations to her such that would support an equitable estoppel argument.

For these reasons, and as discussed below, the Court should dismiss this lawsuit based upon the applicable statute of limitations.

## FACTUAL & PROCEDURAL BACKGROUND

In her Amended Complaint (and related filings), Plaintiff alleges that during various periods beginning in 1979 and ending in 1992, she was repeatedly abused by her uncle. (D.E. 40, PageID # 206; D.E. 40-1, PageID # 209; D.E. 40-3 PageID # 220.) In addition to being a member of her family, Plaintiff alleges that her uncle was involved with the Paris Congregation during that time. (D.E. 40-1, PageID # 209.) According to the allegations in the Amended Complaint, Plaintiff was a minor until 1989. (*Id.*) Plaintiff alleges her uncle abused her from 1979 until 1984, then again from 1985 until 1988. (D.E. 39 at PageID # 196; D.E. 39-2 at PageID # 203; D.E. 40-1 at PageID # 213; D.E. 40-3 at PageID # 220.) In addition, Plaintiff alleges that her uncle engaged in a single instance of abuse in 1992. (D.E. 40-1 at PageID # 213; *see also* D.E. 39 at PageID # 196; D.E. 39-2 at PageID # 203, 210; D.E. 40-3 at PageID # 220.)

Plaintiff alleges that the abuse she suffered occurred in Tennessee and, to a far lesser extent, in Kentucky. (*See* D.E. 40-1, PageID # 209.) Although she claims she lived in Illinois for a period in the mid-1980s, Plaintiff does not allege that her uncle abused her there. (*See* D.E. 40-1, PageID # 213.) In fact, she appears to affirmatively state that she was ***not*** abused in Illinois. (D.E. 40-1 at PageID # 214 (alleging that she had a "break" from the abuse during the time after she left Paris and before she "came back"; *see also* D.E. 40 at PageID # 207.)[1]

---

[1] Defendants note this point for purposes of completeness. As noted in the choice of law section below, even if some abuse allegedly occurred in Illinois, it would not impact the analysis here.

Plaintiff also alleges that one or more of the Defendants either knew or should have known of her uncle's abuse. (*See* D.E. 40-1 at PageID # 214.) Specifically, she alleges that in 1984 or 1985, her uncle confessed to elders of the Paris Congregation. (D.E. 40-1 at PageID # 213.) Although it is clear from the Amended Complaint that Plaintiff does not know precisely what her uncle confessed to, she claims it was related to his abuse of her or perhaps other minors, or possibly to viewing pornography. (*See* D.E. 39-2 at PageID # 203; D.E. 40-1 at PageID # 214; D.E. 40-3 at PageID # 220.)

In addition, Plaintiff alleges that, in 1992, her uncle confessed to the elders of the Paris Congregation that he had abused Plaintiff. (D.E. 39 at PageID # 196; D.E. 39-2 at PageID # 203; D.E. 40 at PageID # 205; D.E. 40-1 at PageID # 211–12; D.E. 40-3 at PageID # 220.) It is clear from the allegations in the Amended Complaint that her uncle's alleged confession in 1992 occurred ***after*** the ***last*** time he abused her. (*See* D.E. 40-1 at PageID # 209, 213 (specifically describing the final incident of abuse in 1992 as attempted rape); *see also* D.E. 39 at PageID # 196 (alleging, with respect to the alleged 1992 confession, that Plaintiff's uncle "admitted to trying to rape [her] in 1992"); D.E. 39-2 at PageID # 203 (same); D.E. 40-3 at PageID # 220 (same).)

Plaintiff does not claim that she recently discovered the abuse she suffered at the hands of her uncle. She had, and has, first-hand knowledge. Instead, in the Amended Complaint, Plaintiff recounts a conversation in 1992 (after the last instance of abuse by her uncle) where she specifically told her grandmother that her uncle had sexually abused her. (D.E. 40-1 at PageID # 211–12.) Likewise, Plaintiff nowhere alleges any recent discovery of her uncle's alleged confessions to the elders of the Paris Congregation either in the mid-1980s or in 1992.

---

The fact that Plaintiff lives in Illinois today, decades after the claims allegedly accrued, is also irrelevant to the analysis.

3

Plaintiff alleges that she previously believed that, following the last instance of abuse in 1992 and her uncle's alleged confession, he had been "disfellowshipped" from the church, reported to the authorities, and incarcerated. (*Id.* at PageID # 212.) Notably, though, Plaintiff specifically alleges that she had this belief based on information she says her mother told her—not information that the Defendants told her. (*Id.*)[2] In fact, Plaintiff specifically states that Defendants did not speak to her about this matter at the time. (*Id.*) In addition, Plaintiff was apparently aware that her uncle was not fully incarcerated, as she states she believed that "he went to work during the day and went to jail at night in the county jail." (*Id.*) After contacting Defendants for the first time regarding this issue in 2020, Plaintiff's understanding of what occurred apparently changed. (*See id.*)

Plaintiff filed this suit on September 15, 2021 in the United States District Court for the Middle District of Tennessee. (D.E. 1.) She filed her Amended Complaint on April 11, 2022. (D.E. 39, 40.) The Middle District transferred the case to this Court on June 16, 2022. (D.E. 51.) Defendants have never entered any agreement with Plaintiff to toll the running of the limitations period or otherwise extend the deadline for her to file suit.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted."[3] The Court is required, for purposes of considering

---

[2] Plaintiff also does not allege that Defendants provided this information to her mother. (*See* D.E. 40-1 at PageID # 212.)

[3] As noted above, Defendants previously filed a Rule 12(b)(3) motion seeking to transfer this case based on improper venue. Federal courts in Tennessee regularly exercise their discretion to hold that a successive motion under Rule 12(b)(6) is appropriate when consistent with the spirit of Rule 12(g), and the motion is not filed to create delay or to inconvenience the plaintiff. *See, e.g., Duren v. Byrd*, No. 1:18-CV-00084, 2021 WL 3848105, at *10–11 (M.D. Tenn. Aug. 26, 2021); *Brooks v. Hoffman*, No. 3:13-CV-278, 2014 WL 2818991, at *2 (E.D. Tenn. June 19, 2014); *Adams v.*

a Rule 12(b)(6) motion, to accept as true all of the well-pleaded allegations of the complaint and construe all of the allegations in the light most favorable to the non-moving party. *First Choice Prop. & Dev., LLC v. Travelers Pers. Ins. Co.*, No. 121CV02371STAJAY, 2021 WL 3924072, at *2 (W.D. Tenn. Sept. 1, 2021) (Anderson, C.J.) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992)). On the other hand, "legal conclusions or unwarranted factual inferences need not be accepted as true." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Under Fed. R. Civ. P. 8, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "detailed factual allegations" are not necessary, a plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *First Choice Prop. & Dev., LLC*, 2021 WL 3924072, at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). A claim has "facial plausibility" only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

---

*Tennessee*, No. 3:04-CV-00346, 2011 WL 3236609, at *3 (M.D. Tenn. July 29, 2011). That is particularly true when, as is the case here, the initial Rule 12 motion was aimed at ensuring the case was before the correct court. *See Duren*, 2021 WL 3848105, at *10–11 (jurisdiction); *Brooks*, 2014 WL 2818991, at *2 (venue); *Adams*, 2011 WL 3236609, at *3 (jurisdiction). The Motion to Dismiss is not intended to cause delay or inconvenience and is instead intended to avoid wasting time and resources in preparing and filing an Answer and a subsequent motion for judgment on the pleadings when the Amended Complaint is subject to dismissal. *See* Fed. R. Civ. P. 12(h)(2) (authorizing a motion to dismiss for failure to state a claim in a motion for judgment on the pleadings after an answer is filed).

Dismissal under Rule 12(b)(6) is proper when "the allegations on the face of the complaint show that the claim is time-barred." *Lock v. FedEx Corp. Servs., Inc.*, No. 15-CV-02647-STA-TMP, 2015 WL 7018398, at *3 (W.D. Tenn. Nov. 12, 2015) (Anderson, J.) (citing *Jones v. Bock*, 549 U.S. 199, 212 (2007)); *see also Durham v. Estate of Losleben ex rel. Tatum*, No. 16-1042-STA-EGB, 2017 WL 1437209, at *2 (W.D. Tenn. Apr. 21, 2017) (Anderson, C.J.), *aff'd*, 744 F. App'x 268 (6th Cir. 2018). In other words, "[w]hen it is apparent on the face of the complaint that the statute of limitations has run, the defense of statute of limitations may be raised by a motion to dismiss." *Reid ex rel. First Horizon Nat. Corp. v. Baker*, No. 10-2413-STA, 2011 WL 976547, at *7 (W.D. Tenn. Mar. 16, 2011) (Anderson, J.) (quoting *Jenkins v. Carruth*, 583 F. Supp. 613, 615 (E.D. Tenn. 1982)), *aff'd*, 499 F. App'x 520 (6th Cir. 2012). Moreover, "a plaintiff has an 'obligation' to plead facts in avoidance of the statute of limitations when 'the face of the complaint discloses a failure to file within the time allowed.'" *Id.* (quoting *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 520 (6th Cir. 2008)).

Although *pro se* complaints may be "liberally construed," *pro se* litigants "are not exempt from the requirements of the Federal Rules of Civil Procedure." *Curran v. Wepfer Marine, Inc.*, No. 1:20-CV-1229-STA-JAY, 2021 WL 5746010, at *2 (W.D. Tenn. Dec. 2, 2021) (Anderson, C.J.) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Accordingly, "a court cannot 'create a claim which [a plaintiff] has not spelled out in [her] pleading.'" *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (first alteration in original) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)). Likewise, courts are not required to "ferret out" claims on behalf of a *pro se* litigant because doing so "would transform the courts from neutral arbiters of disputes into advocates for a particular party." *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011).

**LAW & ARGUMENT**

    **I.    The Limitations Period for Plaintiff's Claims Are Governed by Tennessee Law.**

As a threshold matter, Plaintiff's claims against Defendants are governed by Tennessee law. Under the *Erie* doctrine, a federal court sitting in diversity must apply the forum State's choice-of-law rules. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1509 (2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under Tennessee's established choice of law principles, Tennessee law—and, thus, Tennessee's statute of limitations—applies to Plaintiff's claims.[4]

While it is unclear the specific causes of action Plaintiff may intend to bring against Defendants, the allegations in the Amended Complaint sound in tort, and Plaintiff seeks relief for personal injuries she allegedly has suffered. In personal injury cases, "Tennessee follows the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws to choice-of-law questions." *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009) (citing *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)). Under this approach, the Court "must presumptively apply the 'law of the state where the injury occurred . . . unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties.'" *Burns v. Taurus Int'l Mfg., Inc.*, 826 F. App'x 496, 499 (6th Cir. 2020) (alteration in original) (quoting *Hataway*, 830 S.W.2d at 57).

---

[4] In its screening memorandum pursuant to 28 U.S.C. § 1915(e), the Middle District recognized that "the statute of limitations may be an issue in this case," but it mentioned this issue only under Illinois law without performing any choice of law analysis. (D.E. 6 at PageID # 30.) Presumably, this is because Plaintiff listed an Illinois statute in the civil cover sheet filed with her Complaint. (*See* D.E. 1; PageID # 14.) Regardless, the Middle District expressly left open the possibility of Defendants raising the statute of limitations at any time, including in a motion to dismiss. (*See id.* at PageID # 30, n.3; D.E. 7 at PageID # 32.) As discussed herein, Tennessee law clearly applies to Plaintiff's claims, and they should be dismissed because they are time-barred.

To determine whether a state has a "more significant relationship" to the matter than the state where the injury occurred, courts consider:

> a) the needs of the interstate and international systems,
> b) the relevant policies of the forum, the relevant policies of other interested states, and the relative interests of those states in the determination of the particular issue,
> c) the protection of justified expectations,
> d) the basic policies underlying the particular field of law,
> e) certainty, predictability and uniformity of result, and
> f) ease in the determination and application of the law to be applied.

*Id.* at 499–500 (quoting *Hataway*, 830 S.W.2d at 59, n.3); *see also* Restatement (Second) of Conflict of Laws § 6. In addition, the Court should consider the following "contacts" set forth in Restatement (Second) of Conflict of Laws § 145 when applying the factors listed above: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." *Burns*, 826 F. App'x at 500 (quoting *Montgomery*, 580 F.3d at 459–60).

The most important of these considerations point in favor of applying Tennessee law. In general, courts consider the relevant policies of the forum, the relevant policies of other interested states, and the relative interests of those states in the determination of the particular issue by evaluating the contacts from Restatement (Second) of Conflict of Laws § 145 listed above. *See Burns*, 826 F. App'x at 500. Looking to these contacts demonstrates that Tennessee law should apply.

Nearly all the alleged acts causing injury that Plaintiff describes in the Amended Complaint—i.e., the instances when she was abused by her uncle—occurred in Tennessee. While Plaintiff mentions (without providing details) that she also was abused in Murray, Kentucky, all other instances of abuse are alleged to have occurred in Tennessee. (*See* D.E. 40-1 at PageID #

209.) For this reason alone, the law of Tennessee presumptively applies. *Burns*, 826 F. App'x at 499; *see also Wahl v. Gen. Elec. Co.*, 786 F.3d 491, 500 (6th Cir. 2015); *Harwell v. Am. Med. Sys., Inc.*, 803 F. Supp. 1287, 1295 (M.D. Tenn. 1992).

Similarly, nearly all the conduct Plaintiff alleges against the Defendants occurred in Tennessee. Although that conduct is not alleged to have caused injuries independent of her uncle's abuse, her uncle's alleged "confessions" to elders of the Paris Congregation occurred in Tennessee. Whatever actions were taken (or not taken) as a result of those confessions occurred in Tennessee. It is unclear what conduct (or inaction) allegedly occurred by WTPA and/or WTNY, but whatever it was, any decision to act or not to act occurred outside Tennessee decades ago and is far outweighed by the conduct alleged to have occurred in Tennessee. Accordingly, this "contact" points in favor of applying Tennessee law.

The parties are currently citizens of more than one state. Of significance, the Paris Congregation was and is located in Tennessee, and Plaintiff was a Tennessee resident during the time of the alleged abuse and other actions alleged in the Amended Complaint. Similarly, the Plaintiff does not have any current "relationship" with any of the Defendants. To the extent any relevant "relationship" existed decades ago, it centered on Plaintiff's kinship with her uncle, and supposedly by extension, the Paris Congregation in Paris, Tennessee. Thus, to the extent these "contacts" impact the Court's analysis, they favor applying Tennessee law in this case.

All remaining considerations are either neutral or inapplicable and cannot overcome the presumption in favor of applying Tennessee law. There is no reason to believe that applying the law of a state other than Tennessee in this case would "further harmonious relations between states and . . . facilitate commercial intercourse between them," making the factor concerning the "needs of the interstate and international systems" neutral or inapplicable. *Burns*, 826 F. App'x at 500.

As for the "basic policies underlying the particular field of law"—i.e., tort law—the relevant policies are deterrence of wrongdoers and compensation of injured parties. *See id.* at 501. Defendants are not aware of any reason that applying Tennessee law would undermine these policies in any meaningful way.[5] In addition, absent evidence that any party justifiably expected that a particular state's law would apply, considerations related to "protection of justified expectations, and "certainty, predictability and uniformity of result" are generally irrelevant. *Burns*, 826 F. App'x at 502. Likewise, because the Court could apply Tennessee law just as easily as any other state's law, the factor regarding "ease in the determination and application of the law to be applied" is, at most, neutral. *Burns*, 826 F. App'x at 502.

Accordingly, Tennessee law—including Tennessee's statute of limitations—applies in this case.

## II. The Allegations in the Amended Complaint Affirmatively Show that Plaintiff's Claim Is Time-Barred.

Applying Tennessee's statute of limitations, it is clear from the face of the Amended Complaint that the limitations period for Plaintiff's claims expired long ago. Tennessee's statutes of limitations "reflect 'a societal choice that actions must be brought within a certain time period.'" *Waste Servs. of Decatur, LLC v. Decatur Cnty., Tenn.*, 367 F. Supp. 3d 792, 809 (W.D. Tenn. 2019) (Anderson, C.J.) (quoting *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012)). They are intended to "prevent undue delay in filing lawsuits," "avoid the uncertainties and burdens inherent in pursuing and defending stale claims," and to "ensure that

---

[5] When applying Tennessee choice-of-law rules, the Sixth Circuit has repeatedly held that it is improper for a court, in applying this factor, to consider the "outcome" of applying a particular statutory time bar. *See Burns*, 826 F. App'x at 501–02; *Montgomery*, 580 F.3d at 462. In other words, "Tennessee's choice-of-law analysis does not turn on whether a plaintiff has a viable claim in one state but not another." *Montgomery*, 580 F.3d at 462.

evidence is preserved and facts are not obscured by the lapse of time or the defective memory or death of a witness." *Id.*

As a rule, Tennessee law requires an action for personal injury to "be commenced within one (1) year after the cause of action accrued." Tenn. Code Ann. § 28-3-104(a)(1)(A). When a cause of action accrued while a plaintiff was a minor, the plaintiff can bring the action "within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years" after turning eighteen years of age. Tenn. Code Ann. § 28-1-106(a).[6] Under Tennessee law, claims against a sexual abuser "and any other person or entity that caused the alleged abuse" accrue at the time the alleged abuse occurred. *See Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 463–64 (Tenn. 2012).

Accordingly, Plaintiff had three years after turning eighteen years of age in 1989 to file suit against Defendants for claims that accrued while she was a minor. *See id.* And Plaintiff had one year after her uncle's alleged abuse occurring in 1992 to file suit against Defendants for claims related to that incident. Thus, the limitations period on all of Plaintiff's claims expired sometime in 1993. But Plaintiff did not file suit against Defendants until September 15, 2021—nearly 30 years too late. Accordingly, Plaintiff's claims are untimely based on the facts in the Amended Complaint.

---

[6] Recently, Tennessee has enacted a statute providing that a personal injury action based on "child sexual abuse" that "occurred when the injured person was a minor" and "occurred before July 1, 2019, but was not discovered at the time of the abuse," must be brought within three years from "the time of discovery of the abuse by the injured person." Tenn. Code Ann. § 28-3-116(b)(1). This limitations period does not apply because, among other things, Plaintiff has not alleged that she did not discover the abuse at the time it occurred. She could not so allege, since she had first-hand knowledge and says she discussed it with at least her grandmother decades ago. Regardless, even if this new statute could be applied (it cannot because of Tennessee constitutional principles prohibiting retroactive application), Plaintiffs' claims still would be untimely.

11

### III. Plaintiff Has Failed to Meet Her Obligation to Plead Facts in Avoidance of the Statute of Limitations.

Because Plaintiff's claim is, on its face, untimely, she is required at a minimum to plead facts showing that she could avoid the statute of limitations defense. *See Reid*, 2011 WL 976547, at *7 (quoting *Bishop*, 520 F.3d at 520); *see also James v. Petra Fin., LLC*, No. 15-2297-STA-CGC, 2015 WL 7289430, at *4 (W.D. Tenn. Nov. 17, 2015) (Anderson, J). Plaintiff has failed to meet this obligation. Tennessee law recognizes three doctrines that allow tolling of limitations in civil cases under certain circumstances: the discovery rule, fraudulent concealment, and equitable estoppel. *See Redwing*, 363 S.W.3d at 459–60. But the facts Plaintiff has pleaded do not plausibly raise the application of ***any*** of these doctrines.

#### A. *Plaintiff Has Failed to Plausibly Allege the Discovery Rule May Apply.*

As the Sixth Circuit has recently reaffirmed, Tennessee's discovery rule will "prevent[] a cause of action from accruing only until the "injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *Cahio v. Drexel Chem. Co.*, ___ F. Supp. 3d ___, 2022 WL 1698386, at *3 (6th Cir. 2022) (quoting *Schultz v. Davis*, 495 F.3d 289, 292 (6th Cir. 2007)). In other words, the limitations period "is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry." *Id.*; *see also Reid*, 2011 WL 976547, at *8.

Plaintiff has made no allegation whatsoever in the Amended Complaint that she has recently "discovered" or "uncovered" her uncle's sexual abuse. In addition, Plaintiff says that she was aware that her uncle confessed to actions in the mid-1980s that she claims were sufficient to put Defendants on notice of his propensity to sexually abuse minors. (*See* D.E. 39-2 at PageID # 203; D.E. 40-1 at PageID # 214; D.E. 40-3 at PageID # 220.) And Plaintiff has not alleged in any

way that this was a recent discovery.[7]  She asserts that she told her grandmother about the abuse in 1992.  (D.E. 40-1 at PageID # 211–12.)  Moreover, Plaintiff claims that Defendants should have contacted her more than thirty years ago to gather more information following her uncle's alleged confession. (D.E. 40 at PageID # 206.)  She does not—and cannot reasonably—allege that she only recently became aware that Defendants had not contacted her.  Accordingly, Plaintiff had knowledge of the wrong she alleges occurred and of Defendants' alleged role in her injuries decades ago and has delayed bringing suit until now.  The discovery rule simply does not apply under these circumstances.

### B. *Plaintiff Has Failed to Plausibly Allege Fraudulent Concealment.*

Plaintiff also cannot rely on the doctrine of fraudulent concealment to prevent dismissal.  Under Tennessee law, a plaintiff must allege facts showing "that the defendant affirmatively concealed its identity or the plaintiffs' injury to rely on fraudulent concealment to toll the statute of limitations." *Cahio*, ___ F. Supp. 3d ___, 2022 WL 1698386, at *5 (citing *Redwing*, 363 S.W.3d at 462–63).  Plaintiff has made no such allegations.

Plaintiff has made no allegation in the Amended Complaint that even suggests that she only recently learned of her uncle's abuse or about his alleged confessions to the elders of the Paris Congregation in the mid-1980s and in 1992.  Plaintiff does not plausibly allege that Defendants made any representations to her or that they concealed their identities or her injuries.  At most,

---

[7] Plaintiff also claims that, in 1992, she was aware that her uncle allegedly had confessed to abusing her to elders of the Paris Congregation. (*See* D.E. 40 at PageID # 211–12; D.E. 40-3 at PageID # 220.)  As explained further below, what Defendants did or did not do in response to the alleged 1992 confession could not possibly have contributed to Plaintiff's injuries because the Amended Complaint makes clear that this confession occurred ***after*** the ***last*** time she was abused. (*See* D.E. 39 at PageID # 196; D.E. 39-2 at PageID # 203; D.E. 40-1 at PageID # 209, 213; D.E. 40-3 at PageID # 220.)  Nonetheless, by 1992, Plaintiff had enough information to cause a reasonable person to assert the claims in the Amended Complaint.

13

Plaintiff has alleged that, beginning in 1992, she was under the impression from statements made by her mother that the Paris Congregation, WTPA, and/or WTNY had reported her uncle's conduct to law enforcement, that he had been "disfellowshipped" from the church, and that he was incarcerated. But these allegations do not plausibly show fraudulent concealment for several reasons.

First, any actions Defendants took following Plaintiff's uncle's alleged confession in 1992 have no bearing on her claims. According to the Amended Complaint, the 1992 confession occurred *after* the last incident of abuse that Plaintiff suffered by her uncle. Given this timeline, the way Defendants handled the 1992 confession could not have contributed to Plaintiff's injuries in any way because the events causing those injuries had already transpired. As a result, Plaintiff's belief about what Defendants did in response to the 1992 confession is irrelevant and could not have impacted her understanding of whether she had a claim, the nature of her claim, or Defendants' involvement in that claim.

Second, even if Plaintiff's belief about what Defendants did in response to the 1992 confession were considered potentially relevant, Plaintiff has not alleged that Defendants were the source of her misunderstanding of what occurred. Instead, Plaintiff specifically states that she based her belief that her uncle had been disfellowshipped, reported to the authorities, and incarcerated on information her mother—not Defendants—told her. (D.E. 40-1 at PageID # 211–12.)[8] This alone is enough to defeat any argument for fraudulent concealment, as the Sixth Circuit has clarified, applying Tennessee law, that actions of third parties cannot form the basis for tolling under the fraudulent concealment doctrine. *Cahio*, ___ F. Supp. 3d ___, 2022 WL 1698386, at *5

---

[8] Plaintiff also does *not* allege that Defendants made any such representations to her mother.

("In any event, the plaintiffs' factual allegations fail to show that Drexel affirmatively concealed its identity or the cause of the plaintiffs' injuries. Most of the plaintiffs' allegations concern actions taken by their employers, not Drexel.").

Third, to rely on fraudulent concealment, Plaintiff must allege that she "could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence." *Redwing*, 363 S.W.3d at 463. Plaintiff makes no such allegations. Instead, looking to the allegations in the Amended Complaint, Plaintiff had sufficient facts at least by 1992 to—at a minimum—put her on inquiry notice to investigate the allegations she makes against Defendants in this case. At that time, she knew that her uncle was involved in the Paris Congregation; she knew that he had abused her repeatedly; she believed that he had previously confessed to Defendants; she knew that she had never been contacted by Defendants regarding the abuse; and she knew that, at the time of the last incident of abuse in 1992, her uncle was not incarcerated.[9] That was enough to provide Plaintiff notice of any potential claim she might have against Defendants, but Plaintiff waited **nearly 30 years** to act on that knowledge. "Like the discovery rule, the effects of the doctrine of fraudulent concealment cease when the plaintiff 'discovers or should have discovered the defendant's fraudulent concealment or *sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim . . . .*'" *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 556 (Tenn. Ct. App. 2015) (italics in original) (quoting *Redwing*, 363 S.W.3d at 463). Thus, because Plaintiff had "actual or constructive notice" of any claim she might have against Defendants in 1992, she cannot rely on the fraudulent concealment doctrine. *Id.*

---

[9] Moreover, even if the fact that Plaintiff's uncle was not incarcerated after 1992 were relevant to her claims—though, as discussed above, it is not—Plaintiff claims to have believed that her uncle was continuing to work outside of his jail cell. (D.E. 40-1 at PageID # 212.) That alone is enough to put a reasonable person on notice to determine whether her uncle was actually incarcerated.

15

The undersigned counsel have identified two Tennessee state appellate decisions addressing fraudulent concealment of sexual abuse claims by religious entities. Applying the more lax pleading standards applicable in Tennessee state court,[10] both of these decisions held that the plaintiff(s) pleaded sufficient facts to permit denial of a motion to dismiss based upon fraudulent concealment alleged in the complaint. Nonetheless, instead of supporting the application of that doctrine here, both cases demonstrate that the Amended Complaint is insufficient to defeat Defendants' Motion to Dismiss.

The *Redwing* decision concerned a "dispute regarding the civil liability of the Catholic Diocese of Memphis for acts of child sexual abuse allegedly perpetrated by one of its priests in the 1970s." *Redwing*, 363 S.W.3d at 436. The plaintiff was allegedly abused by a priest many years prior to filing suit. Though the statute of limitations had presumptively expired, the plaintiff specifically alleged that the Diocese affirmatively misled him regarding his claim:

> Mr. Redwing's complaint contains allegations that both the Roman Catholic Church and the Diocese knew, but covered up, the clergy's sexual abuse of minors and that the Diocese was aware that Fr. Guthrie sexually abused minors ***and misled Mr. Redwing and his family about its knowledge and involvement***. Considered in the light most favorable to Mr. Redwing, the allegation that the Diocese misled Mr. Redwing and his family could be construed to mean that at some point, Mr. Redwing or his family asked the Diocese about its knowledge of Fr. Guthrie's conduct and that the Diocese's response misled them. The Court of Appeals has correctly recognized that this circumstance could amount to fraudulent concealment.

*Id.* at 466 (emphasis added). Had the *Redwing* case been decided in federal court, a "bare allegation" that the plaintiff had been misled would be insufficient to support the conclusion that the plaintiff or his family "asked the Diocese about its knowledge of [the priest]'s conduct and that

---

[10] Thus far, the Tennessee Supreme Court has rejected the "plausibility" pleading standard established by the United States Supreme Court in the *Twombly* and *Iqbal* decisions, which governs this Court's consideration of Defendants' Motion to Dismiss. *See Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 424 (Tenn. 2011).

16

the Diocese's response misled them." *See Twombly*, 550 U.S. at 555 (noting that the facts alleged must be sufficient "to raise a right to relief above the speculative level"). Regardless, as discussed above, Plaintiff has not alleged Defendants misled her at all. Instead, she claims some confusion regarding Defendants' response to her uncle's alleged 1992 confession (which, as discussed above, is irrelevant to any claim she may have)—confusion that resulted from a conversation she says she had with her mother, not Defendants. That is simply insufficient to support a fraudulent concealment claim.

In *Doe 1 v. Woodland Presbyterian*, an unpublished decision, the Tennessee Court of Appeals considered the timeliness of claims by multiple plaintiffs against various Presbyterian institutional defendants, alleging that the defendants were responsible for a former pastor's abuse of the plaintiffs. No. W202100353COAR3CV, 2022 WL 1837455, at *1 (Tenn. Ct. App. June 3, 2022). The plaintiffs in *Woodland Presbyterian* appears to have pleaded more facts in support of fraudulent concealment than the plaintiff in *Redwing*:

> Plaintiffs alleged, among many other things, that "[i]n the summer of 2019, the **Plaintiffs were told by former Woodland Presbyterian pastor John Sowers that a 'full investigation' was done at the time the complaints were made in the 1990s"**; that "[t]he Plaintiffs recently learned that the 'full investigation' was a complete 'whitewash'"; that "[u]pon information and belief efforts were undertaken to conceal and hide this illegal and heinous activity"; and that "Woodland Presbyterian Church, including its Session, the Presbytery of the Mid-South, Synod of Living Waters, Presbyterian Church (U.S.A.), and their agents and employees were aware of the risks of clergy abuse in the Presbyterian Church in the early 1990s prior to their abuse but failed to implement policies that would protect its own members, including them."

*Id.* at *16 (emphasis added). These are materially different allegations than those in the Amended Complaint. Most notably, a representative for the church at issue in *Woodland Presbyterian* (and not the pastor alleged to have abused plaintiffs) specifically told plaintiffs that a "full investigation" had been made. The plaintiffs later alleged that the investigation had been a sham.

In contrast, in this case, Plaintiff has not alleged that Defendants made any representation to her at all. The Defendants did not conceal the nature or source of the plaintiff's injuries.

For these reasons, Plaintiff has failed to meet her burden to set forth facts in the Amended Complaint sufficient to plausibly allege the existence of fraudulent concealment.

### C.     *Plaintiff Has Failed to Plausibly Allege Equitable Estoppel.*

Finally, Plaintiff has not alleged any facts that would support equitable estoppel. That doctrine requires allegations that a defendant "induced [the plaintiff] to put off filing suit by identifying specific promises, inducements, suggestions, representations, assurances, or other similar conduct by the defendant that the defendant knew, or reasonably should have known, would induce the plaintiff to delay filing suit." *Redwing*, 363 S.W.3d at 460 (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 145 (Tenn. 2001); *Hardcastle v. Harris*, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004)). "In the context of defenses predicated on a statute of limitations, the doctrine of equitable estoppel always involves allegations that the defendant misled the plaintiff," including circumstances such as "a promise not to plead the statute of limitations," "a promise to pay or otherwise satisfy the plaintiff's claim without filing suit," "encouraging the plaintiff not to pursue available legal remedies," representations that a defendant "would settle the plaintiff's claim without litigation following the conclusion of another legal proceeding between the defendant and a third party," and the like. *Id.* at 460–61 (citations omitted).

Here, Plaintiff has made no allegations whatsoever that Defendants took any action to induce her not to file suit. She does not allege that Defendants made her any specific promises, suggestions, representations, or assurances regarding potential settlement or any statute of limitations defense. Plaintiff alleges that she first contacted Defendants regarding this matter, at the earliest, in 2020. Regardless of whatever Defendants told Plaintiff at that point, the statute of

limitations on Plaintiff's claims had long since expired. Accordingly, equitable estoppel cannot toll the limitations period applicable to Plaintiff's claims.

## CONCLUSION

This Memorandum endeavors to address all arguments that could possibly be raised in support of the timeliness of Plaintiff's claims and shows that those arguments are unavailing. Plaintiff's claims sat dormant for nearly 30 years, and the limitations period ran during that time. Plaintiff has not pleaded any facts to support tolling. For the reasons stated, Defendants respectfully request the Court to grant their Motion to Dismiss and dismiss Plaintiff's claims against them with prejudice.

Respectfully submitted,

s/ Robb S. Harvey
Robb S. Harvey (Tenn. BPR No. 11519)
Michael A. Cottone (Tenn. BPR No. 33253)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee  37219
(615) 244-6380
robb.harvey@wallerlaw.com
michael.cottone@wallerlaw.com

*Counsel for Defendants Watch Tower Bible and Tract Society of Pennsylvania, Watchtower Bible and Tract Society of New York, Inc., and Paris TN Congregation of Jehovah's Witnesses*

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing was filed using the Court's CM/ECF System on July 29, 2022. Since Plaintiff does not yet have access to the Court's CM/ECF System, the undersigned will ask his team members to send a copy of this submission via email and via first-class U.S. Mail, postage pre-paid, upon Plaintiff:

Nicol Jackson
809 S Kedvale
Chicago, Illinois  60624
msnicoltjackson@gmail.com

                                         s/ Robb S. Harvey